1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10    AMY COE, et. al.,                          CASE NO. C13-518-MJP

11                        Plaintiffs,            ORDER ON MOTIONS TO DISMISS
                                                 (DKT. NOS. 35, 43)
12            v.

13    PHILIPS ORAL HEALTHCARE INC,

14                        Defendant.

15

16          This matter comes before the Court on the motions of Defendant Philips Oral Health Care

17   Inc., to dismiss.  (Dkt. Nos. 35, 43).  The Court has considered the motions, the responses, the

18   replies, all related papers, and heard oral argument on January 28, 2014.  Fully informed, the

19   Court DENIES Philips' motion to dismiss for lack of Article III standing. (Dkt. No. 35.)  The

20   Court GRANTS Philips' motion to dismiss for failure to state a claim in part and DENIES it in

21   part.  (Dkt. No. 43.)

22                                          **Background**

23          Plaintiffs bring this suit as a putative class action against the Philips Oral Health Care, the

24   maker of Sonicare electronic toothbrushes (referred to hereafter as "Sonicare Toothbrushes").

1  Plaintiffs allege the metal shaft of the toothbrush, which controls the brush speed, becomes

2  loose, thereby reducing the number of brushstrokes and quality of the cleaning.  (Dkt. No. 20 at

3  1-2.)  Plaintiffs characterize this as a "common and inherent defect" in all Sonicare

4  Toothbrushes.  (Id. at 3.)  Yet, Plaintiffs allege the product packaging and product specification

5  posted on the website indicate the vibrating shaft of the toothbrush, will produce 31,000

6  "brushstrokes" per minute and "provide superior cleaning as compared to a manual toothbrush."

7  (Id. at 2.)  Philips provides a two-year warranty for all Sonicare Toothbrushes.  (Id.)  After two-

8  years, Philips offers a 30% discount on the purchase of a new toothbrush.  (Id.)

9      Plaintiffs allege Philips is aware of the defect.  (Id. at 4.)  They claim consumers in the

10  United Kingdom are told a loose handle requires replacement of the toothbrush.  (Id. at 77.)

11  Consumers in the United Kingdom are then sent a new toothbrush.  (Id. at 4.)  In the United

12  States, in contrast, consumers are not told to seek a replacement if the speed of the brushstrokes

13  slows, but to replace the toothbrush heads.

14      The Complaint is brought by four named Plaintiffs.  New York resident Lance Ng

15  purchased a Sonicare model HX6972 in 2010 or 2011 from an online seller.  (Id. at 11.)  He

16  alleges that within a few months, he "noticed the vibrations were no longer effectively being

17  transmitted to the brush head and the toothbrush was no longer providing the superior cleaning

18  advertised or properly cleaning his teeth."  (Id.)  Mr. Ng exercised Philips' warranty and was

19  sent a new toothbrush.  (Id.)  He claims the replacement suffered from the defect, with the shaft

20  on the replacement toothbrush becoming loose—resulting in a slower brush head speed—within

21  a year and a half after receiving it from Philips.  He again exercised his warranty and was given a

22  replacement toothbrush.  (Id.)  When the second replacement toothbrush experienced the same

23  purported defect outside the warranty period, Mr. Ng paid a third party to repair it.

24

1   The second Plaintiff, Robert Bueso, is a Florida resident.  (Id. at 12.)  He purchased a

2 Sonicare Healthy White in 2010 at a Costco in Florida.  He claims the toothbrush manifested

3 "the defect" within two years of use. In April 2013, more than two years after he purchased the

4 toothbrush, Mr. Bueso called Philips and demanded a full refund based on his belief "Philips

5 could not provide him with a defect free toothbrush."  (Id.)

6   Plaintiff Amy Coe purchased a Sonicare for Kids toothbrush in 2011.  (Id. at 13)  She

7 claims the toothbrush failed "long before the end of the expected useful life" as a "result of the

8 Defect."  She never sought to exercise her warranty rights.  (Id.)

9   Finally, Connecticut resident Sam Chawla purchased a Flexcare+ model approximately

10 three years before this lawsuit commenced.  (Id.)  Mr. Chawla claims his toothbrush's vibrations

11 became less powerful and the toothbrush was not providing the superior cleaning as advertised.  .

12 (Id. at 14.)  He bought new brush heads in an attempt to fix the problem.  He never exercised his

13 warranty.  (Id.)

14   Plaintiffs' Complaint includes seven claims for relief.  Plaintiffs' first claim, brought on

15 behalf of the four named Plaintiffs and the entire putative class, alleges a violation of the

16 Magnuson-Moss Warranty Act, 15 U.S.C. §2301 et. seq.  The second and third claims are

17 brought on behalf of the four named Plaintiffs and the Florida, New Jersey, Connecticut, and

18 New York putative subclasses and assert claims for breach of express and implied warranties.

19 The fourth claim is on behalf of all four named Plaintiffs and the proposed national class for

20 violations of the Washington Consumer Protection Act, RCW § 19.86.010 et seq.  The fifth

21 claim is brought on behalf of Plaintiff Chawla and the Connecticut subclass for violations of

22 Connecticut Unfair Trade Practices Act, Conn. Gen. stat. §§42-110a et. seq. The sixth claim is

23 brought on behalf of Plaintiff Ng and the New York subclass for violations of New York General

24

1  Business Law, §§349, 350.  The seventh, and final claim, is brought on behalf Plaintiff Coe and

2  the New Jersey subclass and alleges violations of the New Jersey Consumer Fraud Act, N.J.S.

3  §58:8-1, et. seq.

4      Philips moves to dismiss Plaintiffs' claims on a number of grounds.  First, it argues

5  Plaintiffs cannot meet Article III standing requirements.  (Dkt. No. 35.)  Second, Philips asserts

6  that Plaintiffs' consumer protection claims, which sound in fraud, do not meet the heightened

7  pleading requirements of Federal Rule of Civil Procedure 9(b).  (Dkt. No. 43 at 13.)  Third,

8  Philips contends Plaintiffs' allegations fail to plead the elements of relevant Connecticut, Florida,

9  New York, New Jersey express/implied warranty laws and the Magnuson-Moss Warranty Act.

10  (Id. at 19-21.)

11                                    **Discussion**

12    A.  Article III Standing

13      To establish standing under the "case or controversy" requirement of Article III of the

14  United States Constitution, a plaintiff must demonstrate a sufficient personal stake in the

15  outcome to justify the invocation of judicial process.  Baker v. Carr, 369 U.S. 186, 204 (1962).

16  To have standing under Article III, a plaintiff must demonstrate that (1) he has suffered an actual

17  or threatened injury in fact; (2) the injury is causally connected to the conduct complained of;

18  and (3) it is likely, and not merely speculative, that his injury will be redressed by a favorable

19  decision.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  The requisite injury-in-fact

20  pursuant to Article III must be actual or threatened, and not merely speculative.  Id.

21      Plaintiffs have the burden of establishing these elements to invoke federal jurisdiction.

22  Id.  However, in ruling on a motion to dismiss for want of standing, the "court[ ] must accept as

23  true all material allegations of the complaint, and must construe the complaint in favor of the

24

1  complaining party." <u>Warth v. Seldin</u>, 422 U.S. 490, 501 (1975).  Thus, "[a]t the pleading stage,"

2  as in this case, "general factual allegations of injury resulting from the defendant's conduct may

3  suffice...." <u>Cardenas v. Anzai</u>, 311 F.3d 929, 933 (9th Cir. 2002) (<u>quoting</u> <u>Lujan</u>, 504 U.S. at

4  561); <u>see also</u> <u>Lucas v. S.C. Coastal Council</u>, 505 U.S. 1003, 1014 n. 3(1992) ("<u>Lujan</u>, since it

5  involved the establishment of injury in fact at the summary judgment stage, required specific

6  facts to be adduced by sworn testimony; had the same challenge to a generalized allegation of

7  injury in fact been made at the pleading stage, it would have been unsuccessful.").  The court

8  cannot, however, interpret the complaint so liberally as to extend its jurisdiction beyond

9  constitutional limits.  <u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).

10      In this putative class action, "if none of the named plaintiffs purporting to represent a

11  class establishes the requisite of a case or controversy with defendants, none may seek relief on

12  behalf of himself or any other member of the class." <u>Id</u>. (<u>quoting</u> <u>Lierboe v. State Farm Mut.</u>

13  <u>Auto Ins. Co.</u>, 350 F.3d 1018, 1022 (9th Cir. 2003)).  Finally, "Petitioners must allege and show

14  that they personally have been injured, not that injury has been suffered by other, unidentified

15  members of the class to which they belong and which they purport to represent." <u>Warth v.</u>

16  <u>Selding</u>, 422 U.S. 490, 501 (1975).

17      Philips argues Plaintiffs lack standing because they have not suffered any injury, there is

18  no causal connection, and a favorable decision would not provide any redress because Philips

19  already offer a full warranty.  (Dkt. No. 35 at 6-7.)  The Court addresses each required element

20  of standing.

21      The main element disputed is the first, injury in fact.  Philips argues Plaintiffs have not

22  suffered a concrete and particularized injury when (1) Plaintiffs do not claim worse dental

23  hygiene from the alleged defect; and (2) Plaintiffs failed to exercise their warranty or request

24

1   Philips cure the defect.  (Dkt. No. 35 at 6.)  In essence, because Plaintiffs received the benefit of

2   the bargain—in the form of a full warranty—they cannot prove an injury.  (Id. at 8.)

3          Plaintiffs assert a benefit of the bargain theory sufficient to find an injury in fact.  Under

4   established Ninth Circuit precedent, allegations a plaintiff overpaid for a product because it did

5   not work as advertised, is legally cognizable loss for standing.  Mazza v. American Honda Motor

6   Co., Inc., 666 F.3d 581, 594-95 (9th Cir. 2012), accord In re Toyota Motor Corp. Unintended

7   Acceleration Mktgs., Sales Practices, and Prods. Liab. Litig., 754 F.Supp.2d 1145, 1164

8   (C.D.Cal. 2010).  In Mazza, the Ninth Circuit found a consumer's allegations he would not have

9   purchased certain products had their labels been accurate and that he paid a premium due to the

10  labeling were sufficient to plead injury in fact, even if the product contained a warranty.  The

11  court concluded that the plaintiffs alleged an injury in fact because they "were relieved of their

12  money by Honda's deceptive conduct."  Id. at 595.  Like in Mazza, Plaintiffs allege they were

13  "relieved of their money" and paid too much for their Sonicare Toothbrushes by Philips' failure

14  to disclose a known defect.  (Dkt. No. 20, at 11.)  Plaintiffs Ng and Chawla allege additional

15  injury, in the form of expenses incurred in attempts to repair or correct the alleged defect.  (Id.)

16         The injury Plaintiffs allege is not hypothetical, which distinguishes it from Birdsong v.

17  Apple, Inc., 590 F.3d 955 (9th Cir. 2009), the chief case relied on by Philips.  In Birdsong, the

18  plaintiffs claimed "that the iPod's inherent risk of hearing loss has reduced the value of their

19  iPods and deprived them of the full benefit of their bargain because they cannot 'safely' listen to

20  music."  Thus, the injury claimed in Birdsong flowed from the potential for injury, not already

21  incurred financial losses.  Id. at 960.  Nor is this case like Thiedemann v. Mercedes-Benz USA,

22  LLC, 183 N.J. 234 (2005).  In Thiedmann, the court found Mercedes-Benz actually fixed the

23  defect in the vehicles.  In contrast, Plaintiff Ng alleges Philips merely replaced one defective

24

1  product with another.  On the issue of standing, <u>Thiedmann</u> is neither authoritative nor

2  applicable.

3      Plaintiffs also plead causation for Article III standing.  Causation requires there be a

4  "fairly ... trace[able]" connection between the alleged injury in fact and the alleged conduct of

5  the defendant.  <u>Lujan</u>, 504 U.S. at 506-61.  Here, there is no real dispute that plaintiffs plead but

6  for the alleged omissions, they would not have purchased the toothbrushes or taken steps to

7  correct the defect.  Philips takes issue with the lack of proof, but at the pleading stage, the bar is

8  low for standing.  <u>Anzai</u>, 311 F.3d 929.  The Court finds it met.

9      Finally, Plaintiffs demonstrate redressability.  Redressability means it is "likely" and not

10  "merely speculative" that the plaintiff's injury will be remedied by the relief plaintiff seeks in

11  bringing suit.  <u>Lujan</u>, 504 U.S. at 506-61.  Plaintiffs allege they paid too much for a defective

12  product.  Without question, the relief sought—compensation for the overpayment—remedies the

13  alleged injury.  <u>Association of Public Agency Customers v. Bonneville Power Admin.</u>, 733 F.3d

14  939, 954 (9th Cir. 2013).

15      In sum, the Court finds all the elements of Article III standing met.

16      Philips also takes issue with Plaintiffs' standing to pursue claims for toothbrushes they

17  did not purchase.  (Dkt. No. 35, at 15.)  Given the early stage of this case, the Court finds the

18  allegations sufficient.  While there is no controlling authority, the majority of federal courts that

19  have addressed the issue hold a plaintiff may have standing to assert claims for unnamed class

20  members based on products he or she did not purchase so long as the products and alleged

21  misrepresentations are substantially similar.  See, e.g., <u>Donohue v. Apple, Inc.</u>, 871 F.Supp.2d

22  913, 921–22 (N.D.Cal. 2012) (collecting cases); <u>accord</u> <u>Anderson v. Jamba Juice Co.</u>, 888

23  F.Supp.2d 1000, 1005 (N.D.Cal. 2012)("There is sufficient similarity between the products

24

1   purchased (Mango-a-go-go and Razzmatazz smoothie kits) and the products not purchased

2   (Strawberries Wild, Caribbean Passion, and Orange Dream Machine smoothie kits) because the

3   same alleged misrepresentation was on all of the smoothie kits regardless of flavor.").  Like

4   Donohue and Anderson, Plaintiffs allege all Sonicare Toothbrushes have the same shaft defect,

5   which ultimately slows the speed of the brush heads.  (Dkt. No. 20 at 19.)  Moreover, in this

6   early stage of the litigation, Philips' argument is "better taken under the lens of typicality or

7   adequacy of representation, rather than standing.")  Forcellati v. Hyland's, Inc., 876 F.Supp.2d

8   1155, 1161 (C.D.Cal. 2012).

9        The cases cited by Philips do not support a different conclusion.  First, Miller v.

10   Ghirardelli Chocolate Co., 912 F. Supp. 2d 861 (N.D. Cal. 2012), is off point, because the court

11   found the products in that case, various kinds of packaged chocolate, were dissimilar.  Id. at 864.

12   Here, in contrast, Plaintiffs allege the exact same shaft design (and defect) for all the

13   toothbrushes at issue.  In re Wash. Mut. Mortgage-Backed Secs. Litig., 276 F.R.D. 658

14   (W.D.Wash. 2011), addressed if Plaintiffs had standing under Section 11 of the Securities Act of

15   1933, not Article III.  Id.  It does not apply to the facts of this case.

16        The Court finds the allegations sufficient to establish Plaintiffs' standing to sue for

17   models of toothbrushes they did not purchase.

18     B.  Warranty Claims

19        In considering Philips' motion to dismiss under Federal Rule 12(b)(6), this Court must

20   accept all of the Complaint's well-pled factual allegations as true and must draw all reasonable

21   inferences in Plaintiffs' favor.  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).

22   However, Rule 12(b)(6) requires a court to dismiss a claim when "there is no cognizable legal

23   theory or an absence of sufficient facts alleged to support a cognizable legal theory."  Navarro v.

24

1   Block, 250 F.3d 729, 732 (9th Cir. 2001).  A plaintiff must plead "more than a sheer possibility

2   that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "To

3   survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

4   to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. Corp. v. Twombly,

5   550 U.S. 44, 570 (2007)).

6       1.   Breach of Implied Warranty Claims

7           Philips argues Plaintiffs lack contractual privity because they did not purchase their

8   toothbrushes directly from Philips, and thus cannot maintain a claim for breach of implied

9   warranty of merchantability.  (Dkt. No. 43 at 21.)

10          As an initial matter, the Court addresses what substantive law applies to Plaintiffs' breach

11  of implied warranty claims.  Although Plaintiffs cite to Washington cases in their opposition to

12  the motion, they offer no reason why the laws of this state would apply.  (Dkt. No. 52 at

13  12)("The law of Washington might likely govern any implied warranty claims.")  Moreover,

14  Plaintiffs actually plead claims under the laws of the specific states where they purchased the

15  toothbrushes—Florida, New Jersey, Connecticut, and New York—on behalf of consumers in

16  those states.  (Dkt. No. 20 at 35.)  The Court therefore applies Florida, New Jersey, Connecticut,

17  and New York law.

18          Even if the Court were faced with a dispute about what law governs, it would still apply

19  Florida, New Jersey, Connecticut, and New York law.  Patton v. Cox, 276 F.3d 493, 495 (9th

20  Cir. 2002) (A federal court, sitting in diversity, must apply "the forum state's choice of law rules

21  to determine the controlling substantive law").  Washington has adopted the Restatement

22  (Second) of Conflict of Laws and engages in a conflict of law analysis for each issue.  Singh v.

23  Edwards Lifesciences Corp., 151 Wn. App. 137, 210 P.3d 337 (2009).  Under that approach, the

24

1  Court initially addresses whether a conflict between the law of Washington and those of Florida,

2  New Jersey, Connecticut, and New York exists.  For the purposes of this analysis only, the Court

3  assumes one does, because Washington recognizes a third-party beneficiary exception to the

4  privity requirement and the other states do not.

5  Next, the Court applies the "most significant relationship" test to determine which

6  substantive law to apply.  The "most significant relationship" test requires a two-step inquiry.

7  Johnson v. Spider Staging Corp., 87 Wn.2d 577, 580 (1976).  First, the Court must determine

8  which state has the most significant relationship to the cause of action.  Id.  Second, if the

9  relevant contacts to the case are balanced, then the Court must consider "'the interests and public

10  policies of potentially concerned states and ... the manner and extent of such policies as they

11  relate to the transaction in issue.'"  Id. at 582 (quoting Potlatch No. 1 Fed. Credit Union v.

12  Kennedy, 76 Wn.2d 806, 810 (1969)).  Plaintiffs reside in Florida, New Jersey, Connecticut, and

13  New York.  They allege purchasing the toothbrushes for use in their home states.  The purported

14  representations were made in these states, as was the alleged damage and injury.  In contrast, the

15  only connection to Washington is Philips' incorporation here.  The significant relationship test

16  weighs in favor of Florida, New Jersey, Connecticut, and New York.

17  Turning to the second step, the Court finds Plaintiffs' home states have substantial public

18  policy interests in protecting their consumers from defective products.  See Mazza, 666 F.3d

19  581)("Consumer protection laws are a creature of the state in which they are fashioned.  A state

20  may impose or not impose liability depending on policy choices made by state legislatures or, if

21  legislators left a gap or ambiguity, by state supreme courts").  Because the states where Plaintiffs

22  and the putative class reside have the most significant relationship to the facts of this case, the

23  Court applies the laws of New Jersey, Connecticut, and New York.

24

1    Applying that law, the Court finds Plaintiffs fail to allege viable claims for breach of

2    implied warranty of merchantability.  The focus of the Parties' arguments and this Court's

3    analysis is whether New Jersey, Connecticut, and New York require contractual privity between

4    a consumer and the manufacturer.  Plaintiffs do not argue they have contractual privity with

5    Philips.  Instead, they claim New Jersey, Connecticut, and New York have abandoned the

6    requirement of privity.[1]  This is not true.  See Hamon v. Digliani, 174 A.2d 294 (Conn. 1961)

7    (privity of contract is required for an implied warranty claim); Hartford Cas. Ins. Co. v.

8    PureTech Waters of Am., LLC, 2012 WL 1435221, at *2-4 (Conn. Super. Ct. Mar. 30, 2012)

9    (discussing privity as a requirement for implied warranty of merchantability claim, but not for

10   implied warranty of fitness for particular purpose); Duall Bldg. Restoration, Inc. v. 1143 E.

11   Jersey Ave. Assocs., 652 A.2d 1225, 1229–30 (N. J. Super. Ct. App. Div. 1995)(same); Lexow

12   & Jenkins, P.C. v. Hertz Commercial Leasing Corp., 122 A.D.2d 25, 26 (N.Y. App. Div. 1986)

13   (vertical privity is required unless seller is the agent of manufacturer).  Because Plaintiffs fail to

14   allege vertical privity, a prerequisite for a breach of implied warranty of merchantability, the

15   Court DISMISSES the claims.

16   2.   Breach of Express Warranty

17   Plaintiffs assert claims for breach of express warranty under the laws of Florida, New

18   Jersey, Connecticut, and New York.  (Dkt. 20 at 32.)  Plaintiffs identify the following as express

19   warranties: (1) Philips' two-year product guarantee; and (2) statements on the Sonicare

20   Toothbrush packaging and product specifications.  (Dkt. No. 20 at 23.)

21

22   _____

23       [1] Plaintiffs admit privity is a requirement in Florida: "Plaintiffs do not dispute that Florida
generally requires vertical priviy for an implied warranty claim."  (Dkt. No. 52 at 21.)  By this
24   concession, the complaint fails as to the Florida claim.

1    Philips contends the Complaint fails to state a claim for either the two-year warranty or

2    Sonicare Toothbrush packaging/specifications, because Plaintiffs fail to allege they relied on the

3    supposed warranties before purchasing the products or that Philips breached them.  The Court

4    agrees.

5         Beginning with Philips' two-year product guarantee, it provides:

6         Philips Consumer Lifestyle guarantees its products for a period of two years after
          the date of purchase.  In any defect due to faulty materials and workmanship
7         occurs within this two-year guaranteed period, Philips Consumer Lifestyle will
          repair or replace the product at its expense.

8    (Dkt. No. 20 at 69.)

9         Plaintiffs Coe, Bueso, and Chawla, who never exercised that warranty, cannot assert a

10   claim for breach of express warranty.  A manufacturer is "not liable for breach of express

11   warranty merely because a product manifests recurring failures during the warranty period.

12   Rather, the question is whether [a plaintiff] sought repairs, refunds, or replacements and, if so,

13   whether [the manufacturer] responded appropriately under the warranty."  Kent v. Hewlett–

14   Packard Co., No. 09–5341 JF (PVT), 2010 WL 2681767, at *10 (N.D. Cal. July 6, 2010).

15   Plaintiffs Coe, Bueso, and Chawla cannot establish a breach of express warranty, because there

16   is no allegation they exercised that warranty or that Philips responded inappropriately.  See

17   David v. Am. Suzuki Motor Corp., 629 F.Supp.2d 1309, 1318 (S.D.Fla. 2009)(Manufacturer is

18   only liable under the terms of the warranty); Matter of Cadillac V8-6-4 Class Action, 93 N.J.

19   412, 428 (1983)("Whether the…warranty was actually breached…depends…on the

20   manufacturer's failure to meet its obligation to repair").

21        Plaintiffs' creative pleading does not save the Complaint.  For example, Plaintiffs assert,

22   "Philips is unable or unwilling to provide a repair for the Defect or replacement Toothbrushes

23   that do not suffer from the Defect."  (Dkt. No. 20 at 34.)  This is speculation.  Plaintiffs Coe,

24

1    Bueso, and Chawla never gave Philips a chance to honor, or breach, the two-year guarantee.

2    Twombly, 550 U.S. at 555 (the complaint must indicate more than mere speculation of a right to

3    relief.)  Nor do they offer any authority that allows them to extrapolate the experience of Plaintiff

4    Ng as their own.  In another instance, Plaintiffs explicitly speculate: "[t]o the extent any

5    Plaintiffs did not make a demand for repair under the express warranty, it was because Philips

6    failed to disclose the Defect, and instead sought to obfuscate the existence of the Defect by

7    informing consumers that the loss of cleaning power was due to worn brush heads, and not the

8    result of a systemic and inherent Defect."  (Dkt. No. 20 at 34.)  Plaintiffs, however, do not allege

9    any facts to support the notion they were induced to sit on their hands and not submit their

10   warranty claim.  The Court DISMISSES the claims of Plaintiffs Coe, Bueso, and Chawla for

11   breach of warranty based on the two-year guarantee.

12           Plaintiff Ng, who twice exercised his two-year product guarantee, also fails to state a

13   claim, but for different reasons.  His claim for breach of express warranty under New York law

14   requires him to plead the warranty existed, it was breached, and he relied on the warranty.  Haag

15   v. Hyundai Motor America, No. 12–6521L, 2013 WL 481234, at *2 (W.D.N.Y Sept. 10, 2013.)

16   Plaintiff Ng's claim fails on the second element, breach.  "A manufacturer's liability for breach

17   of an express warranty derives from, and is measured by, the terms of that warranty." Cipollone

18   v. Liggett Group, Inc., 505 U.S. 504, 525 (1992).  Here, Philips' two-year guarantee promised

19   replacement of a Sonicare Toothbrush, if "any defect due to faulty materials and workmanship

20   occurs within this two-year guaranteed period."  (Dkt. No. 20 at 69.)  Philips complied with the

21   terms of that warranty by replacing Plaintiff Ng's toothbrush twice during the two-years after

22   purchase.  There is no allegation of breach.  Asp v. Toshiba Am. Consumer Products, LLC, 616

23

24

1   F.Supp.2d 721, 731 (S.D.Ohio 2008)(in applying New York law, "if a lack of breach is apparent

2   from complaint, dismissal is appropriate").  The Court DISMISSES Plaintiff Ng's claim.

3          In addition to the two-year product guarantee, Plaintiffs identify four statements on the

4   Sonicare Toothbrush packaging and specifications as express warranties:

5          (i) Philips claims on the product packaging and the product specifications posted
           on its website that the vibrations generated by the handle (the "Sonic
6          Technology") result in the brush head providing 31,000 "brushstrokes" per
           minute, far more "brushstrokes" than possible with a manual brush;
7          (ii) the specifications and product packaging…promise that the Toothbrushes will
           remove twice as much dental plaque as a manual toothbrush, while the
8          DiamondClean model promises to remove five times as much plaque as a manual
           toothbrush;
9          (iii) The specifications for the Sonicare Kids model state that it will remove more
           plaque than a manual toothbrush; and
10         (iv) the product packaging and specifications for all models of the Toothbrushes,
           other than the Sonicare Kids model also promise that the "Sonic Technology" will
11         remove dental staining, whiten teeth, and improve gum health more effectively
           than a manual toothbrush.

12  (Dkt. No. 20 at 33.)[2]  Plaintiffs allege these statements became the benefit of the bargain, which

13  was breached when the Sonicare Toothbrushes did not perform as promised.

14         Even if the Court construes the allegations in the Complaint as true, it nonetheless

15  dismisses the Florida, New York, and Connecticut claims because Plaintiffs fail to allege they

16  relied on these statements.  See Schimmenti v. Ply Gem Indus., Inc., 156 A.D.2d 658, 659 (N.Y.

17  App. Div. 2 1989)(To state a claim for breach of express warranty under New York law, the

18  plaintiff must show that there was an "affirmation of fact or promise by the seller, the natural

19  tendency of which [was] to induce the buyer to purchase, and that the warranty was relied

20  _____

21

22  [2] On a motion to dismiss, the court may consider documents or exhibits attached to
    Plaintiffs' complaint, a writing of unquestioned authenticity that is relied upon in the complaint,
    or public records. Swartz v. KPMG, LLP, 476 F.3d 756, 763 (9th Cir. 2007) (stating that on
23  motion to dismiss court may consider exhibits attached to the complaint or other documents
    relied upon in the complaint).  Here, the Court considers the documents attached to the
24  Complaint.

1   upon."); State Farm Ins. Co. v. Nu Prime Roll–A–Way of Miami, Inc., 557 So.2d 107, 108 (Fla.

2   Dist. Ct. App. 1990)(reliance required under Florida law); Danise v. Safety-Kleen Corp., 17

3   F.Supp.2d 87, 97 (D.Conn. 1998) ("In order for a statement to form part of the basis of the

4   bargain between parties, the buyer must demonstrate that he relied on the statement").  Plaintiffs

5   Ng, Chawla, and Bueso's failure to plead reliance is fatal to their claims.

6           The remaining New Jersey claim requires Plaintiff Coe to allege: (1) Defendant made an

7   affirmation, promise, or description about the product; (2) this affirmation, promise, or

8   description became part of the basis of the bargain for the product; and (3) the product ultimately

9   did not conform to the affirmation, promise, or description.  Arlandson v. Hartz Mt. Corp., 792

10  F.Supp.2d 691, 706 (D.N.J. 2011).  Plaintiff Coe's allegations have two fundamental problems.

11  First, she misstates the actual language of the toothbrush packaging; the product packaging

12  actually states, "Speed: Up to 31,000 brush strokes per minute."  (Dkt. No. 20 at 62-

13  67)(emphasis added).  Even if this could be accurately characterized as a warranty, there is no

14  allegation Philips failed to provide a toothbrush that did not comply with the specification, of "up

15  to 31,000 brush strokes per minute."  Second, her conclusory allegations are insufficient to show

16  the toothbrushes she purchased, the Sonicare Kids model, do not conform to the representations.

17  The Sonicare Kids toothbrush represents "Performance: Removes significantly more plaque in

18  hard-to-reach areas than a children's manual toothbrush [Oral-B Stages 4] in children aged 7-

19  10."(Dkt. No. 20 at 67.)  Plaintiff Coe alleges broadly that the toothbrushes she "purchased do

20  not provide the vastly superior cleaning promised by Philips for the expected useful life of the

21  product, and are therefore unsuitable for their intended purpose (i.e. providing teeth cleaning

22  capabilities that are vastly superior to a manual toothbrush)."  (Dkt. No. 20 at 13.)  Plaintiff Coe

23  does not allege the toothbrushes failed to conform to this specific representation – removal of

24

1   plaque in hard to reach areas compared to the Oral-B Stages 4 manual toothbrush for children

2   aged 7-10.  Her claim is consequently DISMISSED.

3          In sum, Plaintiffs' claims for breach of express warranties are DISMISSED.

4      C.   Magnuson-Moss Warranty Claim

5          "[The] disposition of the state law warranty claims determines the disposition of the

6   Magnuson–Moss Act claims."  Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 (9th

7   Cir. 2008).  Having dismissed Plaintiffs' warranty claims under state law, the Magnuson-Moss

8   Warranty Act claim is not viable.  The Court DISMISSES the claim.[3]

9      D.   Consumer Protection Claims

10          Philips argues two bases to dismiss Plaintiffs' consumer protection claims.  First, Philips

11   argues the claims fail under Federal Civil Rule 9(b).  Second, Philips claims Plaintiffs fail to

12   allege required elements of their claim, and therefore, dismissal is appropriate under Rule

13   12(b)(6).

14      1.   Rule 9(b)

15          Rule 9(b) requires, when fraud is alleged, "a party must state with particularity the

16   circumstances constituting fraud . . . ."  It demands that the circumstances constituting the

17   alleged fraud "be specific enough to give defendants notice of the particular misconduct . . . so

18   that they can defend against the charge and not just deny that they have done anything wrong."

19   Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2004).  "Rule 9(b) serves three

20

21          [3] Philips also seeks dismissal of the Magnuson-Moss Warranty Act claim under Rule
22   9(b).  The Court finds that rule has no bearing on the Magnuson-Moss Warranty Act claim,
     which does not sound in fraud.  Philips cases on this point are not persuasive.  See e.g.  In re Con
23   Agra, 908 F.Supp.2d at 1102)(dismissing Magnuson-Moss Warranty Act claim for failure to
     plead an express or implied warranty and not for failing to meet Rule 9(b)).

24

1   purposes: (1) to provide defendants with adequate notice to allow them to defend the charge and

2   deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs;

3   (2) to protect those whose reputation would be harmed as a result of being subject to fraud

4   charges; and (3) to prohibit plaintiffs from unilaterally imposing upon the court, the parties, and

5   society enormous social and economic costs absent some factual basis." <u>Id.</u> at 1125 (internal

6   citations and quotations omitted); <u>v. Ciba–Geigy Corp. USA</u>, 317 F.3d 1097, 1103–04 (9th Cir.

7   2003) ("In cases where fraud is not a necessary element of a claim, a plaintiff may choose

8   nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct. In

9   some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on

10  that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in

11  fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the

12  particularity requirement of Rule 9(b)").

13          As a threshold issue, Philips ignores the well-settled rule that in fraudulent omission

14  cases, like this one, the Rule 9(b) standard is relaxed.  <u>Carideo v. Dell, Inc.</u>, 706 F.Supp.2d 1122,

15  1133 (W.D.Wash. 2010) (in such cases, a plaintiff "will not be able to specify the time, place,

16  and specific content of an omission as precisely as would a plaintiff in a false representation

17  claim."); <u>See</u> <u>also</u>, <u>Falk v. Gen. Motors Corp.</u>, 496 F.Supp.2d 1088, 1098–99 (N.D.Cal. 2007).

18  Applying those principles here, the Court finds Plaintiffs have sufficiently plead their fraud-

19  based claims.  Plaintiffs have sufficiently pleaded the what (concealment of a shaft defect and

20  failure to inform consumers of the defect), and the why (to induce customers to purchase the

21  toothbrushes at the price sold), and when (The date of purchase).  In doing so, Philips has

22  adequate notice of the facts underlying the claims.   <u>In re Conagra Foods Inc.</u>, 908 F.Supp.2d

23  1090 (C.D.Cal. 2012).

24

1    Philips also errs in suggesting Plaintiffs' pleading of scienter is insufficient.  Rule 9(b)

2    provides that "[m]alice, intent, knowledge and other conditions of a person's mind may be

3    alleged generally."  In practice, this means that "[t]he requirement for pleading scienter is less

4    rigorous than that which applies to allegations regarding the 'circumstances that constitute

5    fraud.'"  Oestreicher v. Alienware Corp., 544 F.Supp.2d 964, 968 (N.D.Cal. 2008).  Plaintiffs

6    allege knowledge generally.  In particular, the Court finds Plaintiffs' references to the Philips'

7    related United Kingdom website sufficient to support the inference Philips knew of the defect.

8    In the United Kingdom, Philips specifically informs consumers that a loose metal shaft is

9    indicative of a defect and the toothbrush should be returned for replacement.  (Dkt. No. 20 at 77.)

10   The Court finds this allegation sufficient at this early stage of the case.  See Cooper v. Pickett,

11   137 F.3d 616, 628 (9th Cir. 1997); see also Carideo, 706 F.Supp.2d at 1133.

12       Plaintiffs meet Rule 9(b)'s pleading requirements.

13   2.  Rule 12(b)(6)

14       Next, Philips argues the Court should dismiss Plaintiffs' Washington Consumer

15   Protection ("CPA") claim.

16       The CPA prohibits any "unfair methods of competition and unfair or deceptive acts or

17   practices in the conduct of any trade or commerce."  RCW 19.86.020.  To establish a violation,

18   the plaintiff must show: "(1) an unfair or deceptive act or practice; (2) occurring in the conduct

19   of trade or commerce; (3) affecting the public interest; (4) injuring the plaintiff's business or

20   property; and (5) a causal link between the unfair or deceptive act and the injury suffered."

21   Seattle Endeavors, Inc. v. Mastro, 123 Wn.2d 339, 349 (1994).

22       Philips argues the Complaint does not allege a causal link between the alleged deceptive

23   act and the injury suffered.  (Dkt. No. 43 at 28.)  The Court disagrees.  Plaintiffs assert that

24

1  Philips' failure to disclose the defect caused them to pay substantially more for the product or

2  buy it at all.  (Dkt. No. 56 at 27.)  The claimed proximate cause between the alleged deceptive

3  trade practice and their claimed injury is sufficiently pled.  See Zwicker v. General Motors

4  Corp., No. C07-0291-JCC, 2007 WL 5309204, 5 (W.D.Wash. July 26, 2007) (finding causation

5  where "Plaintiffs specifically pled that had GM informed them about the nature of the

6  speedometer defect they would either not have purchased the cars or paid less for

7  them…Common sense also dictates they may have taken steps to avoid damages other than the

8  sheer costs of repair, such as…court fees for her speeding ticket, by fixing the device prior to a

9  full-fledged malfunction").

10        Plaintiffs' claim under the Connecticut Unfair Trade Practices Act also survives the

11  motion to dismiss.  Philips arguments for dismissal wrongly cast Plaintiffs' claim as one of

12  misrepresentation.  (Dkt. No. 43 at 29.)  Instead, Plaintiff Chawla, a Connecticut resident, alleges

13  he overpaid for his toothbrush and purchased new toothbrush heads because Philips failed to

14  disclose the defect.  (Dkt. No. 20 at 11.)  Further, in this case alleging omission, reliance is not

15  required.  See Caldor v. Heslin, 577 A.2d 1009, 1013 (Conn. 1990).  Nor must Plaintiff Chawla

16  allege scienter.  Bailey v. Employment Sys., Inc. v. Hahn, 545 F. Supp. 62, 67 (D. Conn. 1982).

17  Finally, viewing the Complaint's factual allegations as true, the Court also finds an ascertainable

18  loss: expenses for the new toothbrush heads and overpayment for the toothbrush.  Although

19  Philips may well be correct that Plaintiff Chawla would have to purchase the toothbrush heads

20  regardless of the defect, on a motion to dismiss, the Court draws all inferences in favor of Mr.

21  Chawla.  The Court DENIES the motion as to the Connecticut Unfair Trade Practices Act claim.

22        Philips contends that Plaintiff Coe's claim fails under the New Jersey Consumer Fraud

23  Act because she did not first exercise her warranty.  (Dkt. No. 43 at 27).  Generally, this is true.

24

1    <u>Thiedemann</u>, 872 A.2d at 786.  However, New Jersey recognizes an exception to the requirement

2    that a plaintiff exercise her warranty, where it would be futile because repair or replacement

3    would not cure an underlying defect.  N.J.S.A. 12A:2–719(2); <u>Asp</u>, 616 F.Supp.2d at 737.

4    Plaintiff Coe pleads the exact situation contemplated in the exception: if she had initiated a

5    request for repair or replacement, she would have simply swapped one defective product for

6    another.  (Dkt. No. 56 at 26.)  Under New Jersey law, the claim survives.  <u>Ackerman v. Coca-</u>

7    <u>Cola Co.</u>, 2010 WL 2925955, at * 24 (E.D.N.Y. July 21, 2010).  Nor is Coe's failure to plead

8    reliance grounds for dismissal.  Unlike common law fraud, which requires allegations that the

9    plaintiff relied on the defendant's misrepresentations or omissions, New Jersey does not require a

10   plaintiff to demonstrate reliance.  <u>Gennari v. Weichert Co. Realtors</u>, 148 N.J. 582, 607, 691 A.2d

11   350 (1997).  The New Jersey Consumer Fraud Act is also viable as pled.

12        Finally, Plaintiff Ng pleads a claim under New York General Business law ("GBL") §§

13   349, 350.  "In order to show that Plaintiff is entitled to relief… a plaintiff must show: (1) that the

14   act, practice, or advertisement was consumer-oriented; (2) that the act, practice, or advertisement

15   was misleading in a material respect, and (3) that the plaintiff was thereby injured.  <u>Akerman</u>,

16   2010 WL 2925955 at *22.  Contrary to Philips' representations, a Plaintiff is not required to

17   plead reliance.  (<u>Id</u>. at *23.)  Additionally, a plaintiff adequately alleges injury if he claims to

18   have paid a premium for a product based on defendants' inaccurate representations or omissions.

19   <u>Goshen v. Mut. Life Ins. Co. of New York</u>, 98 N.Y.2d 314, 324 (N.Y. 2002).  Here, Plaintiff Ng

20   pleads this exact claim and thus, for purposes of Rule 12(b)(6), has a viable claim under §§ 349,

21   350.

22        Having found the consumer protection claims viable under Rules 9(b) and 12(b)(6), the

23   Court DENIES the motion as to these claims.

24

1    E.   Leave to Amend

2        Plaintiffs request leave to amend the complaint, should the Court dismiss any of their

3    claims.  In the Ninth Circuit, if a claim is based on a proper legal theory but fails to allege

4    sufficient facts, the plaintiff should be afforded the opportunity to amend the complaint.

5    Keniston v. Roberts, 717 F.2d 1295, 1300 (9th Cir. 1983).  "Dismissal without leave to amend is

6    improper unless it is clear, upon de novo review, that the complaint could not be saved by any

7    amendment."  Moss v. U.S. Secret Service, 572 F.3d 962 (9th Cir. 2009).

8        The Court GRANTS the request to amend all the claims dismissed by this Order, except

9    Plaintiffs Coe, Bueso, and Chawla's breach of express warranty for the two-year product

10   guarantee.

11                                   **Conclusion**

12       The Court DENIES Philips' motion to dismiss for lack of standing under Rule 12(b)(1).

13   (Dkt. No. 35.)  The Court GRANTS Philips' motion to dismiss for failure to state a claim in part

14   and DENIES it in part.  (Dkt. No. 43)  The Court GRANTS the motion and dismisses Plaintiffs'

15   claims for breach of implied and express warranties.  Lacking the required state-law claims, the

16   Court also GRANTS the motion to dismiss the Magnuson-Moss Warranty Act claim.  Finding

17   Plaintiffs plead the consumer protection claims under Rule 9(b) and 12(b)(6), the Court DENIES

18   the motion.  The clerk is ordered to provide copies of this order to all counsel.

19       Dated this 24th day of February, 2014.

20

21

22                                            _____
                                             Marsha J. Pechman
23                                           Chief United States District Judge

24